United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN A. MOORE,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.
_____/

No. C 07-1218 PJH

**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

    Plaintiff John A. Moore ("Moore") seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying his claim for disability benefits pursuant to 42 U.S.C. § 405(g). This action is before the court on the parties' cross-motions for summary judgment, and Moore's alternative motion to remand. Having read the parties' papers and administrative record, and having carefully considered their arguments and relevant legal authority, the court GRANTS in part and DENIES in part both parties' motions, and REMANDS this case to the ALJ for further proceedings consistent with the court's order.

## BACKGROUND

    Moore filed an application for supplemental security income benefits on March 1, 2004, and an application for disability insurance benefits on March 29, 2004. A.T. 244, 508. He alleged disability beginning April 20, 2002. A.T. 244. The Commissioner denied those applications on July 8, 2004, and upon reconsideration on November 2, 2004. A.T. 206, 213. Moore filed a request for hearing on December 22, 2004. A.T. 219. A hearing was subsequently held before Administrative Law Judge Robert P. Wenten ("the ALJ") on

February 16, 2006.  A.T. 22.  The ALJ rendered an unfavorable decision on July 13, 2006, finding Moore not "disabled" within the meaning of the Social Security Act.  A.T. 26.  Moore then requested review by the Appeals Council on August 31, 2006.  A.T. 17.  The Appeals Council denied the request for review on January 11, 2007.  A.T. 9.  On March 12, 2007, Moore brought this action seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ's hearing, Moore was forty-eight years-old and had completed high school.  A.T. 22, 144.  He had previously worked as a grounds recycler, a janitor, a machinist, a hand packer, a machine maintainer, a fork lift operator and a shear operator.  A.T. 22.  Moore alleges both physical and mental impairments, but his position in this action is that the mental impairments alone render him disabled.  He alleges that he suffers from a psychotic disorder triggered by his work injuries and unemployment.  A.T. 330-35.

### A. Onset Date

In Moore's 2004 application for Supplemental Security Income, he stated that the onset of his disability was May 28, 2002.  A.T. 508.  In his 2004 Disability Report Form and application for disability insurance benefits, he stated that the onset of disability was April 20, 2002.  A.T. 265.  Subsequently, in his Closing Statement to the ALJ, Moore sought to amend the onset date for the mental disability to June 26, 2004.  A.T. 335.  The ALJ did not formally rule on the proposed amendment.  The ALJ's findings simply note that, in his application for disability insurance benefits, the alleged onset date was April 20, 2002.  A.T. 26.  The unresolved onset date does not affect the court's resolution of the issues raised by Moore.

## STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act ("the Act") provides for the payment of disability insurance benefits to people who have contributed to the Social Security system and who suffer from a physical or mental disability.  See 42 U.S.C. § 423 (a)(1).  To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step analysis.  20

C.F.R. § 404.1520. The ALJ may terminate the analysis at any stage where a decision can be made that the claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

At step one, the ALJ determines whether the claimant is engaged in any "substantial gainful activity," which would automatically preclude the claimant from receiving disability benefits. See 20 C.F.R. § 404.1520(a)(4)(I). If not, at the second step, the ALJ must consider whether the claimant suffers from a severe impairment which "significantly limits [the claimant's] physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(a)(4)(ii). The third step requires the ALJ to compare the claimant's impairment to a listing of impairments in the regulations. If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the listing, the claimant is presumed disabled and is awarded benefits. See 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's condition does not meet or equal a listing, the ALJ must proceed to the fourth step to consider whether the claimant has sufficient "residual functional capacity" ("RFC") to perform his past work despite the limitations caused by the impairment. See 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his past work, the Commissioner is required to show, at step five, that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and past work experience." See 20 C.F.R. § 404.1520(a)(4)(v).

Overall, in steps one through four, the claimant has the burden to demonstrate a severe impairment and an inability to engage in his previous occupation. Andrews v. Shahala, 53 F.3d 1035, 1040 (9th Cir. 1995). If the analysis proceeds to step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work. Id.

////

3

**ALJ's FINDINGS**

In this case, the ALJ determined that Moore was not disabled at step four of the disability evaluation. A.T. 26. The ALJ first concluded that Moore had not engaged in substantial gainful employment activity since the alleged onset of his disability. A.T. 22. At step two, the ALJ found that Moore suffered from two severe and medically determinable impairments, including right shoulder impingement syndrome and an anxiety disorder. A.T. 22. He did not find that other impairments, which Moore alleged resulted from a car accident, were severe. A.T. 22.

At step three, the ALJ found that Moore's physical impairment did not meet the requirements for Listing § 1.02, and that his mental impairment did not meet the requirements for Listing § 12.06. A.T. 23. The ALJ further concluded that none of the medical findings in the record were equal in severity and duration to any of the Listed Impairments. A.T. 23.

Having found that Moore did not suffer from a listed impairment, the ALJ turned to step four and assessed Moore's RFC. A.T. 23. The ALJ first assessed the conclusions of Dr. Miller, who had seen Moore twice after a work accident in which he reportedly bumped his head on the top of a van in which he was riding. A.T. 23. The ALJ noted that Dr. Miller questioned the seriousness of the injury, which Moore had reported to include neck, back and arm pain. A.T. 23. The ALJ next turned to the findings of Dr. Fox, who began seeing Moore in July 2002. Dr. Fox initially noted that Moore's condition significantly limited his freedom of movement. But the ALJ concluded that these limitations were merely a recitation of Moore's complaints rather than medical conclusions. A.T. 23. The ALJ based this finding on Dr. Fox's later conclusions that Moore actually had much greater freedom of movement. A.T. 23. Dr. Fox also found that Moore's subjective complaints were out of proportion to the objective physical findings. A.T. 23.

The ALJ then assessed the findings of Dr. Kaji, who saw Moore in May 2004 and May 2005. A.T. 24. In May 2004, Dr. Kaji concluded that Moore's freedom of movement

4

and ability to lift and carry were not significantly limited.  A.T. 24.  But in May 2005, Dr. Kaji concluded that Moore could sit or stand for no more than two hours and could do only occasional reaching at less than shoulder level with the right arm.  A.T. 24.  The ALJ concluded that Dr. Kaji's 2005 findings should not be given deference because they were inconsistent with other objective evidence, including a negative x-ray of Moore's shoulders from October 2005.  A.T. 25.  Instead, the ALJ gave more deference to Dr. Kaji's 2004 assessment, which was consistent with other evidence in the record.  A.T. 25.

Having surveyed the physical impairment findings, the ALJ turned to the conclusions of Dr. Eberhardt, a psychiatrist who began seeing Moore in May 2005.  A.T. 24.  Dr. Eberhardt diagnosed Moore with a likely psychotic disorder, and later concluded that he would have marked difficulty in accomplishing several basic work functions.  A.T. 24.  The ALJ gave no deference to Dr. Eberhardt's opinions because they were not the conclusions of a treating physician.  A.T. 25.  He found that Dr. Eberhardt had not seen Moore a sufficient number of times to establish a longitudinal treatment history, nor had she provided him any treatment.  A.T. 25.

The ALJ then assessed Moore's own statements regarding his symptoms.  A.T. 25.  In light of the objective medical findings and Moore's past behavior, the ALJ found Moore's statements to be not credible.  A.T. 25.  The ALJ cited the findings of Drs. Fox and Miller, as well as the fact that Moore had missed several treatment appointments.  A.T. 25.  He concluded that Moore's statements at the hearing were merely for the purpose of establishing disability.  A.T. 25.

In considering Moore's statements along with all other evidence in the record, the ALJ concluded that Moore's RFC was medium work with very limited interaction with coworkers and the public.  A.T. 25.  This conclusion, coupled with the testimony of the vocational expert, convinced the ALJ that Moore was able to perform all aspects of his past jobs, and was thus "not disabled" within the meaning of the Act.  A.T. 25.  The ALJ further concluded that, even if Moore could not perform his past work, he would still be "not

disabled" under step five since he could perform other jobs available in the local and national economies.  A.T. 25.

**STANDARD OF REVIEW**

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the ALJ's findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence" means more than a scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision.  Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1991) (citing Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984)).

When the Appeals Council denies review after evaluating the entire record, including newly submitted evidence, that new evidence becomes a part of the administrative record to be reviewed by this court on appeal.  See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993).  Thus, this court must consider the evidence before both the ALJ and the Appeals Council in reviewing the ALJ's decision.  Id.

**ISSUES**

Moore seeks reversal of the Commissioner's denial of disability insurance benefits and supplemental security income payments, arguing that:

(1) the ALJ improperly classified Dr. Eberhardt as a non-treating physician;

(2) the ALJ improperly rejected Dr. Eberhardt's diagnosis;

  (3)  the ALJ applied an incorrect legal standard in determining whether his impairment met the severity of Listing § 12.03; and

  (4)  the ALJ improperly discounted Moore's symptom testimony.

## DISCUSSION

**I. The ALJ did not err in determining that Dr. Eberhardt was not a treating physician.**

Regardless of the source, an ALJ should evaluate every medical opinion he or she receives. 20 C.F.R. § 404.1527(d). Ninth Circuit case law, however, distinguishes amongst the weight to be accorded the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("nonexamining physicians"). 20 C.F.R. §§ 404.1527(d)(1) & (d)(2); Holohan, 246 F.3d at 1201-02. Generally, a treating physician's opinion is entitled to greater weight than the opinions of doctors that do not treat the claimant because treating physicians are the professionals "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . ." 20 C.F.R. § 404.1527(d)(2).

A treating physician is one who has seen the patient with a frequency consistent with accepted medical practice for the type of treatment required for the claimant's medical condition. 20 C.F.R. § 404.1502. A non-treating physician is one who has examined but does not have an ongoing treatment relationship with the patient. Id. There is not, however, a bright line separating treating from non-treating sources because the doctor-patient relationship is "better viewed as a series of points on a continuum reflecting the duration of the treatment relationship and the frequency and nature of the contact." Benton ex rel Benton v. Barnhart, 331 F.3d 1030, 1038 (9th Cir. 2003).

Moore contends that Dr. Eberhardt was a "treating source" because she saw him four times within one year and she provided ongoing treatment. Moore argues that he underwent treatment because Dr. Eberhardt evaluated him, diagnosed him, provided counseling and prescribed medications. A.T. 464, 471, 481, 482-84. Lastly, Moore

7

contends that under the Benton continuum, the ALJ improperly drew a bright line by excluding Dr. Eberhardt as a treating source simply because of the limited contact she had had with him. See Benton, 331 F.3d at 1038. In sum, Moore contends that the extent and nature of his contacts with Dr. Eberhardt satisfy the statutory definition of "treating source." 20 C.F.R. § 404.1502.

In opposition, the Commissioner argues that Dr. Eberhardt was not a treating physician because her findings were not based on a longitudinal history and because Moore did not actually undergo treatment. The Commissioner contends that the ALJ correctly noted that Dr. Eberhardt did not have a sufficient opportunity to know and observe the patient to the extent necessary to afford her treating source weight (citing McAllister v. Sullivan, 880 F.2d at 1089). Moreover, the Commissioner points out that on the day of her diagnosis, Dr. Eberhardt noted that Moore had only "recently beg[u]n treatment." A.T. 497. Accordingly, the Commissioner maintains that the ALJ properly classified Dr. Eberhardt as a non-treating physician.

The ALJ properly determined that Dr. Eberhardt was not Moore's treating psychiatrist. Dr. Eberhardt diagnosed Moore with a psychotic disorder on September 7, 2005. A.T. 496-97. This diagnosis was based on evaluations on May 4, 2005; May 25, 2005; and September 7, 2005, the day of the diagnosis. A.T. 482-84, 481, 471. Dr. Eberhardt also saw Moore one more time on January 11, 2006. A.T. 464. The record therefore indicates that Moore saw Dr. Eberhardt four times within eight months.[1] A.T. 464. Moore has failed to present evidence that the nature and frequency of these contacts are typical for his condition. 20 C.F.R. § 404.1502. Although Moore's argument is not entirely baseless, where the evidence is susceptible to more than one rational interpretation, the court must affirm the ALJ's decision. See Magallanes, 881 F.2d at 750. Here, it was

---

[1] As Moore notes, the ALJ incorrectly stated that Moore had seen Dr. Eberhardt only once before the diagnosis. A.T. 25. He had actually seen her twice. But the error is harmless given that the nature and frequency of the visits could reasonably be considered insufficient to qualify Dr. Eberhardt as a treating source.

8

1  rational for the ALJ to conclude that the nature and frequency of Dr. Eberhardt's contacts were insufficient to qualify her as a treating source.

The Ninth Circuit's decision in Benton, relied on by Moore, is distinguishable from this case. In Benton, the ALJ classified a physician as a treating source even though he had only seen the patient on one occasion. Benton, 331 F.3d at 1037. The Ninth Circuit affirmed the ALJ's decision because the physician had overseen the patient's care as administered by other members of a medical team. Id. Here, Dr. Eberhardt was not, like the Benton physician, supervising a medical team that regularly treated Moore. Instead, Dr. Eberhardt personally examined Moore. Her limited contact with him was therefore a rational basis by which the ALJ could conclude that she was not a treating source.

**II.     The ALJ nevertheless erred in rejecting Dr. Eberhardt's opinion**

Given that Dr. Eberhardt was properly classified as a non-treating physician, she would nonetheless be considered an examining physician since, though she may not have provided regular treatment to Moore, she examined him on multiple occasions. See 20 C.F.R. §§ 404.1527(d)(1). The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). If the examining physician's opinion is uncontradicted, the Commissioner must provide "clear and convincing" reasons for rejecting the opinion. Id. Even if contradicted by another doctor, the opinion of an examining physician may only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. Id. at 831.

After describing Dr. Eberhardt's diagnosis and her contacts with Moore, the ALJ rejected her opinion, reasoning as follows:

> The claimant's attorney argues that Dr. Eberhardt's September 2005 opinion should be adopted. While I normally afford the opinion of a treating physician great weight, I give no deference to Dr. Eberhardt's September 2005 conclusions because they are not truly the conclusions of a treating physician. They are not based on a longitudinal treatment history since Dr. Eberhardt saw the claimant on only one occasion before reporting her conclusion in September 2005, and the record shows clearly that the claimant did not undergo treatment with Dr. Eberhardt. (citations omitted) A.T. 24-25.

Moore's arguments that the ALJ improperly rejected Dr. Eberhardt's opinion proceed under the assumption that she was a treating source. However, as discussed above, the ALJ did not err in refusing to classify Dr. Eberhardt as a treating physician. Moore nevertheless also contends that the ALJ's failure to credit Dr. Eberhardt's opinion was not harmless error. Moore maintains that if the ALJ had credited her opinion, he would have found either that he met Impairment Listing § 12.03, or that there was no work he could perform given the vocational expert's testimony.[2]

The Commissioner contends that even if Dr. Eberhardt was a treating source, the ALJ provided sufficient grounds for rejecting her opinion. The Commissioner does not address whether or not the ALJ provided sufficient grounds for rejecting Dr. Eberhardt's opinion as an examining physician.

The court finds that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Eberhardt's opinion altogether. As noted, the standard for rejecting an examining physician's opinion depends on whether or not that opinion is uncontradicted. Lester, 81 F.3d at 830-31 (ALJ must provide "clear and convincing" reasons for rejecting uncontradicted opinion, and must provide "specific and legitimate reasons" for rejecting contradicted opinion). Here, Dr. Eberhardt's opinion is uncontradicted. She was the only mental health professional to have opineed regarding Moore's impairment during the alleged period of disability.[3]

////
////
////
////

---

[2] The vocational expert testified that if Moore had frequent deficiencies in concentration that resulted in a failure to complete tasks in a timely manner, then he would not be able to perform any available work. A.T. 578-80.

[3] The only other formal psychological evaluation in the record, which found no acute or disabling psychological problems, was conducted in May 2001. A.T. 144-46. This evaluation is not a contradicting opinion, however, since Moore's alleged onset date is either April 30, 2002 or June 26, 2004.

Moreover, the conclusions of Drs. Fox and Kaji, who are not mental health experts,[4] are consistent with Dr. Eberhardt's opinion. In March 2003, Dr. Fox concluded that Moore was suffering from "some underlying emotional problem." A.T. 371. On October 26, 2004, Dr. Kaji referred Moore for psychiatric treatment for an unspecified mood disorder that had persisted over four months. A.T. 404. He classified the referral priority as "STAT" and he prescribed Buspar, which is commonly prescribed for anxiety disorders. A.T. 403-04; Buspar Indications and Dosage, http://www.rxlist.com/cgi/generic/buspir_ids.htm (last visited July 8, 2008). On May 10, 2005, Dr. Kaji noted that Moore's "mental health problems [were] compounding his disability." A.T. 503.

In sum, Dr. Eberhardt's opinion is not contradicted by the record. To the contrary, her opinion is corroborated by the opinions of two other physicians. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (a treating physician's opinion on the mental state of his patient constitutes competent psychiatric evidence even though the physician is not a certified psychiatrist).

Since Dr. Eberhardt qualified as an examining physician, and her opinion was uncontradicted, the ALJ was required to give clear and convincing reasons for rejecting her opinion. See Lester, 81 F.3d at 830. He failed to do so. The ALJ's only stated reason for rejecting Dr. Eberhardt's opinion is that she was not a treating physician. A.T. 25. He then incorrectly noted that Dr. Eberhardt saw Moore only once before her diagnosis and, lastly, simply concluded that "the record shows clearly" that Dr. Eberhardt did not provide treatment. A.T. 25. In support, the ALJ inexplicably cites Social Security Ruling ("SSR") 96-2p, A.T. 25, which concerns the weight afforded to treating physicians. The ALJ's reference to that ruling is confusing since the ruling would have been irrelevant given that the ALJ had just concluded that Dr. Eberhardt was not a treating physician. See Social

---

[4] Dr. Fox is a neurologist, A.T. 369, and Dr. Kaji specializes in family medicine. AMA DoctorFinder, http://webapps.ama-assn.org/doctorfinder/nonMemberPager.do?id=1215541369802 (last visited July 8, 2008). In the course of their treatment, they did not render formal psychological diagnoses, but they did make observations and write prescriptions based on mental health findings.

Security Ruling 96-2p.  Moreover, the ALJ cited no record evidence that conflicted with Dr. Eberhardt's diagnosis, nor could he have since none exists in the current record.  The ALJ thus failed to provide clear and convincing reasons for rejecting Dr. Eberhardt's opinion as an examining physician.  See Lester, 81 F.3d at 830.

The court further rejects the Commissioner's argument that the ALJ disregarded Dr. Eberhardt's opinion because it was brief and in checklist format.  As a threshold matter, the court cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.  Pinto v. Massanari, 249 F.3d 840, 847-48 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).  Here, the ALJ did not proffer these reasons as the basis for rejecting Dr. Eberhardt's opinion.  Even if the court credited the Commissioner's proposed rationale, an ALJ may reject an opinion if it is "brief, conclusionary *and* inadequately supported by clinical findings."  See Thomas, 278 F.3d at 957 (emphasis added).

Dr. Eberhardt's opinion, though arguably brief, is adequately supported by clinical findings.  She had seen Moore on two occasions prior to the diagnosis.  After the first interview, which covered a survey of his symptoms and social history, she concluded that Moore most likely suffered from psychotic depression.  A.T. 483-84.  After the second interview, she concluded that Moore should switch medications from Risperval to Seroquel.  A.T. 481.  On the day of her diagnosis, Dr. Eberhardt's contemporaneous treatment notes describe not only Moore's self-reported symptoms, but also Dr. Eberhardt's objective observations and her analysis of the medication issues.  A.T. 471.

Moreover, the Ninth Circuit has not held, as the Commissioner contends, that an ALJ may reject a physician's opinion simply because it is brief or in checklist format.  The Commissioner argues incorrectly that Magallanes and Crane v. Shalala stand for this proposition.  881 F.2d 747 (9th Cir. 1989); 76 F.3d 251 (9th Cir. 1996).  In Magallanes, the court relied on its earlier decision in Young v. Heckler.  803 F.2d 963, 967-68 (9th Cir. 1986).  In Young, the court affirmed the ALJ's rejection of a treating physician's diagnosis not only because it was brief, but also because the opinion was contradicted by other

12

1    opinions in the record.  Young, 803 F.2d at 967-68.  Here, there are no relevant
2    contradictory opinions in the record.
3        Similarly, in Crane, the Ninth Circuit held that the ALJ properly rejected the checklist
4    diagnosis in that case because the diagnosis did not include explanations for its
5    conclusions.  See 76 F.3d at 253.  The rejection was also proper because the record
6    contained no evidence of impairment during the first year after the alleged onset date.  Id.
7    Here, the diagnosis was supported by clinical evaluations and contemporaneous treatment
8    notes, as discussed above.  Moreover, the record contains evidence of impairment during
9    the first year after the alleged onset date of June 26, 2004.  E.g., A.T. 404.  Accordingly,
10   both Young and Crane are distinguishable from this case.  Moreover, neither case stands
11   for the proposition that an ALJ may reject a physician's opinion simply because it is brief or
12   in checklist format.
13       In sum, even though the ALJ properly classified Dr. Eberhardt as a non-treating
14   physician, he failed to provide adequate reasons for rejecting her opinion as an examining
15   physician.

**III.   The ALJ did not adequately support his finding that Moore's impairment did not meet or equal the severity of Listing § 12.03.**

A claimant is presumed to be disabled within the meaning of the Social Security regulations if he meets the criteria of a listed impairment.  20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P., App. 1 (Listing of Impairments).  An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  Listing § 12.03 requires that the claimant satisfy the criteria described in sections A and B.  20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.03.  Section A requires medically documented persistence, for at least 6 months, either continuous or intermittent, of delusions or hallucinations (or other symptoms not relevant to this analysis).  Id.  Section B requires two or more of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or

13

repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.03.

Though the ALJ did not comment on Listing § 12.03, he assessed the criteria under Listing § 12.06 section B, which is identical to Listing § 12.03 section B. A.T. 23; 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.06. It is unclear from the record why the ALJ focused on § 12.06 rather than on § 12.03, but any error is harmless since both sections of the two listings are identical.

The ALJ stated that the evidence before him did not describe a sufficient degree of functional limitation to satisfy section B of Listing § 12.06, or to satisfy any other listed impairment. A.T. 23. Moore argues that the ALJ improperly made a boilerplate finding that he did not meet a listed impairment (citing Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001)). In opposition, the Commissioner cites Gonzalez v. Sullivan for the proposition that an ALJ need not state why a claimant failed to satisfy every different section of the listing of impairments. 914 F.2d 1197, 1200-01 (9th Cir. 1990). In Gonzalez, the court affirmed the ALJ's adverse impairment findings even though the ALJ did not state what evidence supported his conclusion. Id. at 1200.

Here, the court finds that the ALJ failed to sufficiently evaluate evidence relevant to the Listed Impairment analysis. The ALJ need not have explicitly outlined the basis for his impairment finding, but his "Rationale" section must have included an evaluation of the relevant evidence. See Gonzalez, 914 F.2d at 1201. As discussed above, the ALJ failed to adequately evaluate the opinion of Dr. Eberhardt, which constituted the primary evidence relevant to Listing § 12.03.

**IV.    The ALJ properly evaluated Moore's symptom-reporting.**

The ALJ is responsible for determining the credibility of witnesses, including the claimant, that testify before him or her. Magallanes, 881 F.2d at 750. Unless there is affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's symptom testimony must be clear and convincing. See Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Lester, 81 F.3d at 834). Specifically, the ALJ must articulate the

14

testimony he or she finds not credible and cite evidence that undermines the claimant's complaints. Id. (citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ may engage in ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and inconsistencies in the claimant's testimony. See Burch, 400 F.3d at 680 (citing Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)). Additionally, the ALJ must consider the following factors when assessing a claimant's credibility: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the effects of medication; (5) treatment other than medication; (6) any measures the claimant has taken other than treatment; and (7) any other factors concerning the claimant's functional limitations and restrictions. Id. (quoting Social Security Ruling 95-5p (1995), superseded by Social Security Ruling 96-7p (1996)).[5]

In this case, the ALJ listed several factors that led him to discredit Moore's testimony. A.T. 25. The ALJ considered the objective medical evidence and pointed out what he believed to be multiple inconsistencies between Moore's testimony and his past behavior, including his daily activities. Id. The ALJ also cited the opinions of Drs. Fox and Miller, who noted that Moore may have exaggerated his subjective complaints. Id. In light of this analysis, the ALJ concluded that Moore's testimony was not credible. Id.

The ALJ articulated clear and convincing reasons, relying on substantial evidence from the record, for discrediting Moore's testimony. Initially, the court notes that the ALJ may not have been required to present clear and convincing evidence since Drs. Miller and Fox both suggested that Moore may be malingering. A.T. 348, 361; see Burch, 400 F.3d at 680. The ALJ is only required to present clear and convincing reasons if there is no affirmative evidence of malingering. Id.

---

[5] Social Security Rulings reflect the Commissioner's official interpretation of the Social Security Administration's regulations and, although they do not have the force of law, they are entitled to some deference if they are congruent with the Social Security Act and regulations. Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

However, even if the ALJ was required to provide clear and convincing reasons for rejecting the symptom testimony, Moore has failed to demonstrate that the ALJ's reasons were insufficient. For instance, Moore contends that, when adequately explained, the failure to seek treatment may not be a basis for a negative credibility finding (citing Fair v. Bowen, 885 F.2d 1273, 1284 (9th Cir. 1996)). But given the number of times Moore missed appointments and failed to refill medications, A.T. 407, 430-31, 435, 464, 471, it was not unreasonable for the ALJ to conclude that these failures undermined Moore's credibility. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may make an adverse credibility finding based on an "inadequately explained failure . . . to follow a prescribed course of treatment.").

Moore also argues that the ALJ improperly penalized him for attempting to lead a normal life, relying on Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1999). But the ALJ did not question Moore's credibility because of his ability to engage in daily activities, but instead focused on the inconsistencies in Moore's testimony related to daily activities. A.T. 25. Even if the ALJ was focusing on the activities themselves, an ALJ may make an adverse finding if the claimant engages in daily activities involving skills that could be transferred to the workplace. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

In sum, the ALJ provided several reasons for discrediting Moore's testimony. These reasons were based on reasonable interpretations of the evidence that have been accepted by the Ninth Circuit. Moreover, the bulk of the discredited testimony involved Moore's physical impairments, which are not at issue in this motion. Any error on the ALJ's part would therefore be harmless.

**V.    This Case is Remanded to the ALJ for Further Proceedings**

The final issue is whether this case should be remanded for further proceedings or simply for an award of benefits. The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. Reddick, 157 F.3d at 728. A remand for further proceedings is unnecessary where the record is fully

developed and there are no outstanding issues that must be resolved before a proper disability determination can be made. Varney v. Sec'y of Health and Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988); see also, Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989) (directing an award of benefits where no useful purpose would be served by further proceedings).

No further proceedings are necessary to determine whether Dr. Eberhardt's opinion should be credited. Since the ALJ failed to provide adequate reasons for rejecting Dr. Eberhardt's opinion, the court is required to credit that opinion "as a matter of law." Lester, 81 F.3d at 834; see also Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006). In Lester, the ALJ rejected the opinion of an examining psychologist based on the conflicting testimony of a medical advisor who had not examined the claimant, and also because the psychologist's opinion was based on limited observation. Lester, 81 F.3d at 832. The Ninth Circuit found these rationales to be inadequate, and credited the examining psychologist's opinion as a matter of law. Id. at 834.

Similarly, in Widmark, the ALJ rejected the opinion of an examining physician because of (1) an inconsistency in the report; (2) a lack of corroborating evidence in the record; and (3) the claimant's failure to mention the specific disability in question in his disability claim. Widmark, 454 F.3d at 1067. The Ninth Circuit found these reasons to be inadequate and therefore credited the physician's opinion as a matter of law. Id. at 1069.

In this case, the ALJ's bases for rejecting Dr. Eberhardt were even less substantial than the reasons provided in Lester and Widmark. As discussed above, the ALJ rejected Dr. Eberhardt's opinion based only on the limited contact she had with Moore, and based on the conclusory statement that she had not provided treatment. A.T. 25. Her opinion is therefore credited as a matter of law.

Though further proceedings are unnecessary to determine the validity of Dr. Eberhardt's diagnosis, the court remands with instructions to the ALJ to determine, in light of Dr. Eberhardt's opinion and clinical observations, whether Moore meets or equals Listing § 12.03. See Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (remanding for "proper

17

consideration of step three equivalence because [ALJ] is in a better position to evaluate medical evidence"). The ALJ should also consider any other evidence of psychological impairment, including the conclusions of Drs. Fox and Kaji. See Sprague, 812 F.2d at 1232 (a treating physician's opinion on the mental state of his patient constitutes competent psychiatric evidence even though the physician is not a certified psychiatrist).

On remand, if the ALJ finds that Moore's impairment equals Listing § 12.03, the claimant is presumed to be disabled, and benefits should be awarded. See Marcia, 900 F.2d at 176. If not, the ALJ should continue the disability evaluation to steps four and five, taking into consideration the opinions of Drs. Eberhardt, Fox and Kaji. Id.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART plaintiff's motion for summary judgment, and GRANTS IN PART AND DENIES IN PART the Commissioner's motion for summary judgment. The court remands this case for further proceedings as set forth above.

This order fully adjudicates the motions listed at Nos. 11 and 12 of the clerk's docket for this case. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 21, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge